FILED
2014 Jul-25  AM 09:37
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **QUINCY BERNARD HAMPTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | **Civil Action No.** |
| **CAROLYN W. COLVIN** | ) | **4:13-cv-01473-MHH** |
| **Acting Commissioner of the** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Pursuant to 42 U.S.C. § 405(g), claimant Bernard Hampton seeks judicial review of a final adverse decision of the Commissioner of Social Security[1] affirming the decision of the Administrative Law Judge ("ALJ") who denied Mr. Hampton's claim for a period of disability, disability insurance benefits, and supplemental security income benefits.  (Doc. 1).[2]  As discussed below, the Court

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Therefore, she should be substituted for Commissioner Michael J. Astrue as Defendant in this suit. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. Later opinions should be in the substituted party's name, but any misnomer affecting the parties' substantial rights must be disregarded.").

[2] 42 U.S.C. § 405(g) provides, in pertinent part:

Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

finds that substantial evidence supports the ALJ's decision, so the Court affirms the Commissioner's ruling.

## STANDARD OF REVIEW:

The scope of review in this matter is limited.  "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "review[s] the ALJ's 'factual findings with deference' and [his] 'legal conclusions with close scrutiny.'"  *Riggs v. Soc. Sec. Admin. Comm'r*, 522 Fed. Appx. 509, 510-11 (11th Cir. 2013) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the record to support the ALJ's findings.  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  In making this evaluation, the Court may not "reweigh the evidence or decide the facts anew," and the Court must "defer to the ALJ's decision if it is supported by substantial evidence even if the evidence may preponderate against

---

Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business, or, if he does not reside or have his principal place of business within any such judicial district, in the United States District Court for the District of Columbia.

it." *Gaskin v. Comm'r of Soc. Sec.*, 2013 WL 4081321, *1 (11th Cir. Aug. 14, 2013).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards. If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis, then the Court must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## PROCEDURAL AND FACTUAL BACKGROUND:

On November 20, 2009, Mr. Hampton applied for a period of disability and disability insurance benefits. (Doc. 8-4, pp. 2-3;Doc. 8-6, pp. 2-13). Mr. Hampton filed an application for disability insurance benefits under Title II of the Social Security Act and an application for supplemental security income benefits under Title XVI. *Id.*

The Social Security Administration denied Mr. Hampton's application on January 22, 2010. (Doc. 8-5, pp. 2-4). At Mr. Hampton's request, on June 6, 2011, an ALJ conducted a hearing concerning Mr. Hampton's application. (Doc. 8-3, p. 54). Mr. Hampton and an impartial vocational expert, Norma Jill Jacobson, testified at the June 6, 2011 hearing. (Doc. 8-3, p. 54). At the time of this hearing,

Mr. Hampton was 30 years old.[3]  Mr. Hampton has a high school education. (Doc. 8-3, p. 62).  His past relevant work experience is as an industrial cleaner, a groundskeeper, a grocery bagger and general store helper, and a poultry worker. He also has worked in construction. (Doc. 8-3, p. 72).

The ALJ held a second hearing on January 3, 2012.  Mr. Hampton, Donald Parsons, an impartial vocational expert, and Dr. James Anderson, an impartial medical expert, testified at the January 3, 2012 hearing.  (Doc. 8-3, p. 76).

On March 19, 2012, the ALJ denied Mr. Hampton's request for disability benefits, concluding that Mr. Hampton did not have an impairment or a combination of impairments listed in, or medically equal to one listed in, the Regulations. (Doc. 8-3, p. 49).  In his fifteen page decision, the ALJ described the "five-step sequential evaluation process for determining whether an individual is disabled" and explained that "[i]f it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step."  (Doc. 8-3, p. 36).

---

[3] At 30 years of age, 20 C.F.R. §§ 404.1563(c) and 416.963(c) designate Mr. Hampton as a "younger person."  (*See* Doc. 8-3, p. 54; Doc. 8-4, p. 3).

The ALJ found that Mr. Hampton had not "engaged in substantial gainful activity since November 8, 2009, the alleged onset date." (Doc. 8-3, p. 37).[4]  In addition, the ALJ concluded that Mr. Hampton has "the following severe impairments:  status post right wrist perilunate dorsal carpal distal dislocation with chronic pain; status post gunshot wound to the right knee with chronic pain; adjustment disorder with anxiety; and borderline to low average intellectual functioning."  (Doc. 8-3, p. 37).  The judge stated that these "impairments are considered to be more than slight abnormalities and have more than a minimal effect on the claimant's ability to perform basic work activities."  (Doc. 8-3, p. 38).  Still, the ALJ opined that:

> I have specifically considered listings 1.02, major dysfunction of a joint (due to any cause); 1.03, reconstructive surgery or surgical arthrodesis of a major weight-bearing joint; and 1.06, fracture of the femur, tibia, pelvis, or one or more of the tarsal bones…[and found that Mr. Hampton] does not meet the stringent criteria for these listings.
>
> …
>
> [Mr. Hampton's] mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.05 and 12.06.

---

[4] The Court reviewed not only the ALJ's decision, but also Mr. Hampton's medical records.  The Court finds that the ALJ's description of Mr. Hampton's medical evaluations is accurate.  In a number of instances in this opinion, the Court has provided citations not only to the ALJ's decision but also to the underlying records to illustrate that there is no discrepancy between the two.

(Doc. 8-3, pp. 40-41).  Based on these factual findings, the ALJ concluded that Mr.

Hampton had the residual functional capacity to:

> Perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following exceptions: he can occasionally lift objects weighing up to 50 pounds; frequently lift objects weighing up to 20 pounds; and continuously lift objects weighing up to 10 pounds.  He can occasionally carry objects weight [sic] up to 20 pounds; and frequently and continuously carry objects weighing up to 10 pounds.  He can sit for a total of six out of eight hours and stand/walk for a total of three out of eight hours, but he is precluded from standing for more than one hour at a time, from walking for greater than 30 minutes at a time, and from sitting for greater than two hours at a time.  He is precluded from continuous reaching or pushing and pulling.  He is limited to no more than occasional operation of foot or leg controls with the right foot.  He is limited to no more than occasional climbing, balancing, stooping, kneeling, crouching, or crawling.  He is limited to no more than occasional exposure to unprotected heights, moving mechanical parts, or operation of a motor vehicle.  He is limited to jobs requiring the performance of no more than non-complex job tasks that do not require the worker to read above the fourth grade level or to engage in greater than simple math.

(Doc. 8-3, p. 43).

In reaching his conclusion, the ALJ considered a report from Dr. James

Anderson.  The ALJ stated that he agreed with Dr. Anderson's designation of Mr.

Hampton's severe physical impairments based on his "thorough review of the

record."  (Doc. 8-3, p. 37).  The ALJ noted that Dr. Anderson reported "minimal

residual deficits from [Mr. Hampton's] wrist and knee injuries and [that Mr. Hampton] would be able to perform work at the light exertional level." (Doc. 8-3, pp. 46, 89).  Mr. Hampton also indicated that "a sit/stand option could be included based solely upon the claimant's pain allegations as opposed to the objective medical evidence" and that "if the claimant were complaint [sic] with treatment, the restrictions would be less."  (Doc. 8-3, pp. 46, 89).  Dr. Anderson also "explained that the natural history of a wrist fracture normally would not impair reaching in any way." (Doc. 8-3, pp. 46, 90).  The ALJ gave great weight to Dr. Anderson's opinion, as "it is consistent with and supported by the record as a whole." (Doc. 8-3, p. 46).

The ALJ also considered a psychological consultative evaluation performed by Dr. Mary Arnold.   Dr. Arnold found that Mr. Hampton's "cognitive functioning, fund of information, abstract reasoning, thought processing, thought content, and judgment were within normal limits."  (Doc. 8-3, p. 38; Doc. 8-8, p. 91).  The ALJ also noted that Dr. Arnold "diagnosed adjustment disorder with anxiety (mild) and a Global Assessment of Functioning of 72, meaning that if symptoms are present, they are transient and expectable reactions to psycho-social stressors and no more than slight impairment in social, occupational, or school functioning." (Doc. 8-3, p. 39).  The ALJ gave significant weight to Dr. Arnold's findings with respect to Mr. Hampton's mental functional capacity to the extent it

is consistent with the ALJ's recorded residual functional capacity assessment. (Doc. 8-3, pp. 46-47).

The ALJ reviewed the results of Jack Bentley, Ph.D., who administered the Wechsler Adult Intelligence Scale, Fourth Edition to Mr. Hampton.  (Doc. 8-3, p. 38).  Dr. Bentley reported that "[Mr. Hampton] has a high school education but is barely literate."[5]  (Doc. 8-3, p. 38; Doc. 8-9, p. 69).  The ALJ gave some weight to Dr. Bentley's medical conclusions "to the extent that it supports [the ALJ's] finding that [Mr. Hampton's] intellectual functioning is in the borderline to low average range."  (Doc. 8-3, p. 47).

The ALJ also considered the opinion that Norma Jill Jacobson, a vocational expert, offered at Mr. Hampton's June 6, 2011 SSA review hearing.  The ALJ noted that Ms. Jacobson testified that "[Mr. Hampton] is not able to perform his

---

[5]  The ALJ noted that there is no basis in Dr. Bentley's report for the conclusion that Mr. Hampton is barely literate.  (Doc. 8-3, p. 38).  Further, the ALJ also stated the following regarding Dr. Bentley's report:

> I note that the claimant's representative referred the claimant to Dr. Bentley for testing after the January 3, 2012 hearing.  Thus, the testing that formed the basis of Dr. Bentley's opinion was not administered in an attempt to seek treatment for symptoms, but rather, through attorney referral and in connection with an effort to generate evidence for the current appeal.  Furthermore, Dr. Bentley presumably was paid for the report.  Although such evidence is certainly legitimate and deserves due consideration, the context in which it was produced cannot be entirely ignored.  Moreover, it does not appear that Dr. Bentley reviewed any of the records in the case, and he did not perform a mental status examination in conjunction with the [Wechsler] testing.

(Doc. 8-3, p. 38).

past relevant work under…[the reported] residual functional capacity assessment."
(Doc. 8-3, p. 47; Doc. 8-3, p. 98).

The ALJ considered the medical opinion of Steven Dobbs, Ph.D., the State agency psychological consultant who completed a mental residual functional capacity assessment for Mr. Hampton.  Dr. Dobbs concluded that Mr. Hampton "could understand and remember simple and detailed but not complex instructions…could sustain attention/concentration for two hour periods to complete a regular workday at an acceptable pace and attendance schedule.…[and] could respond to at least simple/infrequent changes in routine."  (Doc. 8-3, p. 44; Doc. 8-8, p. 73).  The ALJ gave significant weight to Dr. Dobbs' findings with respect to Mr. Hampton's mental functional capacity to the extent it is consistent with the ALJ's residual functional capacity assessment.  (Doc. 8-3, pp. 46-47).

The ALJ gave great weight to the medical opinion of Dr. Younus Ismail, a physical consultative examiner.[6]  (Doc. 8-3, p. 46).  Dr. Ismail diagnosed Mr. Hampton with "chronic right knee pain and chronic right wrist pain."  (Doc. 8-3, p. 45;Doc. 8-9, p. 47).   In Dr. Ismail's opinion:

> [Mr. Hampton] could occasionally lift up to 50 pounds;
> frequently lift up to 20 pounds; and continuously lift up
> to 10 pounds[;] . . . could occasionally carry up to 20

---

[6] It appears that the ALJ afforded Dr. Ismail's opinion great weight because "it is consistent with and supported by the record as a whole."  (*See* Doc. 8-3, p. 46).

pounds and frequently and continuously carry up to 10 pounds[;] . . . in an eight-hour workday, [Mr. Hampton] could sit for a total of six hours; stand for a total of two hours; and walk for a total of one hour[;] . . . sit for two hours at one time without interruption; could stand for one hour at one time without interruption; and could walk for 30 minutes at one time without interruption[;] . . . could occasionally reach with the right or left hand and occasionally push or pull with the right or left hand[;] . . . could frequently handle, finger, and feel with the right or left hand[;] . . . could occasionally operate foot controls with the right foot and frequently operate foot controls with the left foot[;] . . . could occasionally climb, balance, stoop, kneel, crouch, or crawl[;] . . . could occasionally tolerate exposure to unprotected heights, moving mechanical parts, and operation of a motor vehicle[;] . . . could frequently tolerate exposure to humidity and wetness; dust, odors, fumes, and pulmonary irritants; extreme cold; extreme heat; and vibrations.

(Doc. 8-3, p. 45; Doc. 8-9, pp. 48-53).  Dr. Ismail also found that:

[Mr. Hampton] could perform activities like shopping; could travel without a companion for assistance; could ambulate without using a wheelchair, walker, two canes, or two crutches; could walk a block at a reasonable pace on rough or uneven surfaces; could use standard public transportation; could climb a few steps at a reasonable pace with the use of a single hand rail; could prepare a simple meal and feed himself; could care for his personal hygiene; and could sort, handle, and use paper/files.

(Doc. 8-3, p. 45; Doc. 8-9, p. 53).

Ultimately, the ALJ determined that Mr. Hampton "is unable to perform any past relevant work."  (Doc. 8-3, p. 47).  The ALJ reasoned that, based on the

testimony of the impartial vocational expert and Mr. Hampton's residual functional capacity assessment, Mr. Hampton "is not able to perform his past relevant work." (Doc. 8-3, pp. 47, 72-73, 93-97).  This determination was made after considering each of Mr. Hampton's areas of past relevant work.  (Doc. 8-3, p. 47).

Though the vocational expert, Donald Parsons, testified that Mr. Hampton has no transferrable job skills, the ALJ considered Mr. Hampton's "age, education, work experience, and residual functional capacity," and decided that "there are jobs that exist in significant numbers in the national economy that [Mr. Hampton] can perform."  (Doc. 8-3, pp. 47-48).  The ALJ explained that:

> The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as parking lot cashier (ODT 211.462-010), light exertional level, unskilled, SVP 2, GED 2 level, of which there are 900 such jobs in Alabama and 110,000 nationally; table worker (seated) (DOT 739.687-182), sedentary exertional level, unskilled, SVP 2, GED 1 level, of which there are 50 such jobs in Alabama and 2,500 nationally; and gate guard (DOT 372.667-030), light exertional level, semiskilled, SVP 3, GED 2 level, of which there are 2,200 such jobs in Alabama and 157,000 nationally.  The vocational expert also testified that he based his testimony on sit/stand options with respect to each job on his extensive experience.
>
> Pursuant to SSR 00-4p, I have determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

> Based on the testimony of the vocational expert, I conclude that, considering [Mr. Hampton's] age, education, work experience, and residual functional capacity, [he] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of 'not disabled' is therefore appropriate under the framework of the above-cited rule.

(Doc. 8-3, p. 48). Consequently, the ALJ decided that Mr. Hampton "is not disabled under sections 216(i) and 223(d) of the Social Security Act," or "under section 1614(a)(3)(A) of the Social Security Act." (Doc. 8-3, p. 49).

On June 17, 2013, this became the final decision of the Commissioner of the Social Security Administration when the Appeals Council refused to review the ALJ's decision. (Doc. 8-3, p. 2). Having exhausted all administrative remedies, Mr. Hampton filed this action for judicial review pursuant to § 205(g) and § 1631(c)(3) of the Social Security Act, 42 U.S.C. §405(g) and § 1383(c)(3).

## <u>ANALYSIS</u>:

To be eligible for disability insurance benefits, a claimant must be disabled. *Gaskin v. Comm'r of Soc. Sec.*, 2013 WL 4081321, *1 (11th Cir. Aug. 14, 2013). "A claimant is disabled if he is unable to engage in substantial gainful activity by reason of a medically-determinable impairment that can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)). A claimant must prove

that he is disabled. *Id.* (citing *Ellison v. Barnhart,* 355 F.3d 1272, 1276 (11th Cir.

2003).   To determine whether a claimant is disabled, the Social Security

Administration applies a five-step sequential analysis. *Gaskin*, 2013 WL 4081321

at *1.

> This process includes a determination of whether the claimant (1) is
> unable to engage in substantial gainful activity; (2) has a severe and
> medically-determinable physical or mental impairment; (3) has such
> an impairment that meets or equals a Listing and meets the duration
> requirements; (4) can perform his past relevant work, in the light of
> his residual functional capacity; and (5) can make an adjustment to
> other work, in the light of his residual functional capacity, age,
> education, and work experience.

*Id.* (citation omitted).   "The claimant's residual functional capacity is an

assessment, based upon all relevant evidence, of the claimant's ability to do work

despite his impairments." *Id.* at *2 (citing *Lewis v. Callahan,* 125 F.3d 1436, 1440

(11th Cir. 1997); 20 C.F.R. § 404.1545(a)(1)).

Here, in assessing whether Mr. Hampton is disabled, the ALJ found that Mr.

Hampton's status post right wrist perilunate dorsal carpal distal dislocation with

chronic pain, status post gunshot wound to the right knee with chronic pain,

adjustment disorder with anxiety, and borderline to low average intellectual

functioning constitute severe physical impairments that "are considered to be more

than slight abnormalities and have more than a minimal effect on the claimant's

ability to perform basic work activities." (Doc. 8-3, p. 38). Nevertheless, the ALJ concluded that Mr. Hampton is not disabled because he can perform jobs that exist in significant numbers in the national economy.

The ALJ based his decision on the following substantial evidence: Dr. Anderson's report that Mr. Hampton suffered from "minimal residual deficits from . . . wrist and knee injuries," but that Mr. Hampton "would be able to perform work at the light exertional level"; Dr. Anderson's report that "a wrist fracture normally would not impair reaching in any way"; Dr. Arnold's finding that Mr. Hampton's "cognitive functioning, fund of information, abstract reasoning, thought processing, thought content, and judgment were within normal limits;" Dr. Arnold's "diagnos[is] [of] adjustment disorder with anxiety (mild) and a Global Assessment of Functioning of 72, meaning that if symptoms are present, they are transient and expectable reactions to psycho-social stressors and no more than slight impairment in social, occupational, or school functioning"; Dr. Bentley's report that Mr. Hampton "is barely literate," albeit "to the extent that it supports [the ALJ's] finding that [Mr. Hampton's] intellectual functioning is in the borderline to low average range"; Dr. Ismail's finding that Mr. Hampton is able to perform certain activities in spite of his impairments; and the vocational expert's opinion that a person of Mr. Hampton's age, education, and work experience with

Mr. Hampton's residual functional capacity can perform jobs that exist in significant numbers in the national economy.

Mr. Hampton argues that despite this substantial evidence, he is entitled to relief from the ALJ's decision because the ALJ failed to properly evaluate Mr. Hampton's case pursuant to Listing 12.05C of the Regulations. (Doc. 10, pp. 6-8). The Court finds that this contention is without merit.

The applicable listing states the following:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

20 C.F.R. § 404 app. 1, § 12.05. "To be considered for disability benefits under section 12.05, a claimant must at least (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22. *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). The requirements of 12.05C include:

> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

20 C.F.R. § 404 app. 1, § 12.05C.  In *Crayton*, the Eleventh Circuit explained:

> Generally, the claimant meets the criteria for presumptive disability…under section 12.05(c) when the claimant presents a valid IQ score of 60 through 70 inclusive, and when the claimant presents evidence of an additional mental or physical impairment significantly affecting claimant's ability to work. *See Lowery v. Sullivan,* 979 F.2d 835, 837 (11th Cir.1992) (a valid IQ score need not be conclusive of mental retardation, where the IQ score is inconsistent with other evidence in the record concerning the claimant's daily activities and behavior).

*Id.* at 1219-20.

To decide whether Mr. Hampton meets the requirements for Listing 12.05C, the ALJ first examined the IQ score requirement.  The ALJ noted that "[a]lthough the IQ scores obtained by Dr. Bentley initially appear to satisfy the criteria of paragraph C, the evidence clearly shows that [Mr. Hampton] is not mentally retarded."  (Doc. 8-3, p. 42).   The ALJ continued, "[Mr. Hampton] does not exhibit the degree of deficits of adaptive functioning needed to support a finding of mental retardation."  (Doc. 8-3, p. 42).  The Regulations state that "adaptive activities" include "cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office."  20 C.F.R. § 404 app. 1, § 12.00C(1).

With respect to Mr. Hampton's adaptive activities, the ALJ noted that:

> [T]he evidence establishes that [Mr. Hampton] played
> football and ran track in high school as well as work[ed]
> part-time; [Mr. Hampton] is able to drive and testified
> during the hearing that he has a valid driver's license and
> does drive; [Mr. Hampton's] social skills are refined per
> Dr. Arnold; prior to his wrist injury, [Mr. Hampton]
> played golf, fished, and hunted; and [Mr. Hampton] has
> maintained long-term relationships with significant
> others and his children. [Mr. Hampton] is independent in
> his activities of daily living and reported to Dr. Arnold
> that he reads the newspaper. [Mr. Hampton's] cognitive
> functioning, fund of information, abstract reasoning,
> thought processing, thought content, and judgment per
> Dr. Arnold's report…[and his] work history [do] not
> support a finding of mental retardation.

(Doc. 8-3, p. 43). On this evidence, the ALJ concluded that Mr. Hampton does not

meet the criteria for Listing 12.05 despite the semblance of a qualifying IQ test

score. (Doc. 8-3, p. 42).

The record confirms that Mr. Hampton has a valid driver's license (Doc. 8-3,

pp. 43, 60-61), drives (Doc. 8-3, pp. 43, 61; Doc. 8-8, p. 92), played football and

ran track in high school (Doc. 8-8, p. 90), worked part-time in high school (Doc. 8-

3, p. 62; Doc. 8-8, p. 90), grooms and dresses himself independently (Doc. 8-8, p.

92), is independent in his activities of daily living (Doc. 8-3, p. 42; Doc. 8-8, p.

92), does his own laundry (Doc. 8-8, p. 92), picks up after himself (Doc. 8-8, p.

92), has the ability manage funds (Doc. 8-8, p. 92), spends time at a friend's house

watching television (Doc. 8-8, p. 92), and has maintained long-term relationships

with significant others and his children (Doc. 8-3, pp. 42, 59-60, 82; Doc. 8-8, pp.

90, 92).  Though Mr. Hampton points to responses to questions that may indicate some degree of intellectual challenge, he has not overcome the substantial evidence in the record that demonstrates that he is capable of performing a wide range of adaptive activities without assistance or supervision.  (*See* Doc. 10, pp. 6-8).  Thus, Mr. Hampton cannot establish a colorable claim under Listing 12.05.

Mr. Hampton argues that the ALJ relied on an outdated consultative report from Dr. Arnold to reach his conclusions.  The argument is not persuasive.  Section 12.05C requires claimants to demonstrate that deficits in adaptive functioning first manifested prior to age 22.  Although Dr. Arnold issued her report four years before Mr. Hampton applied for benefits, Mr. Hampton was 25 years old when Dr. Arnold examined him.  (Doc. 8-8, pp. 89-90).  Consequently, Dr. Arnold's report sheds light on whether Mr. Hampton demonstrated deficits in adaptive behavior prior to age 22.  Dr. Arnold's four-year-old consultative report does not undermine the ALJ's conclusions.  *See Hodges v. Barnhart*, 276 F. 3d 1265, 1266 (11th Cir. 2001) (holding that "there is a presumption that mental retardation is a condition that remains constant throughout life").

Mr. Hampton also argues that the ALJ failed to assess Mr. Hampton's residual functional capacity properly.  (Doc. 10, pp. 8-10).  Mr. Hampton contends that under 20 CFR §§ 404.1567(b) and 416.967(b), "the assessment of Dr. Ismail limits [Mr. Hampton] to sedentary work, not light work as indicated by the ALJ."

(Doc. 10, p. 8).  The Court notes that Dr. Ismail's medical assessment states that Mr. Hampton can occasionally lift up to 50 pounds, frequently lift up to 20 pounds, continuously lift up to 10 pounds, occasionally carry up to 20 pounds, and continuously carry up to 10 pounds.  (Doc. 8-9, p. 48).  Dr. Ismail's assessment also opines that Mr. Hampton, at one time without interruption, can sit for 2 hours, stand for 1 hour, walk for 30 minutes, and in an 8-hour work day can sit for 6 hours, stand for 2 hours, and walk for 1 hour.  (Doc. 8-9, p. 49).

Under the regulations, "sedentary work" is:

> work [that] involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).  "Light work," alternatively is:

> work that involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are

additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

The ALJ did not conclude that Mr. Hampton can perform the full range of light work.  Instead, the ALJ found that "[Mr. Hampton] has the residual functional capacity to perform light work … with … exceptions."  (Doc. 8-3, p. 43).  The exceptions are as follows:

> [H]e can occasionally lift objects weighing up to 50 pounds; frequently lift objects weighing up to 20 pounds; and continuously lift objects weighing up to 10 pounds. He can occasionally carry objects weight [sic] up to 20 pounds; and frequently and continuously carry objects weighing up to 10 pounds.  He can sit for a total of six out of eight hours and stand/walk for a total of three out of eight hours, but he is precluded from standing for more than one hour at a time, from walking for greater than 30 minutes at a time, and from sitting for greater than two hours at a time.   He is precluded from continuous reaching or pushing and pulling.   He is limited to no more than occasional operation of foot or leg controls with the right foot.  He is limited to no more than occasional climbing, balancing, stooping, kneeling, crouching, or crawling.  He is limited to no more than occasional exposure to unprotected heights, moving mechanical parts, or operation of a motor vehicle.  He is limited to jobs requiring the performance of no more than non-complex job tasks that do not require the worker to read above the fourth grade level or to engage in greater than simple math.

(Doc. 8-3, p. 43).

SSR 83-10 explains that "the primary difference between sedentary and most light jobs" is that light jobs "require[] a good deal of walking or standing." SSR 83-10 at *5.  Because Mr. Hampton is limited to standing/walking up to 3 hours in an 8-hour day, his RFC falls somewhere between the Regulatory definition of sedentary work and light work.  In such a situation, the ALJ should rely on vocational expert testimony.[7]  SSR 83-12 at *3.  By relying on vocational expert answers to hypothetical questions reflecting an accurate RFC, the ALJ did not err.  (*See* Doc. 8-3, pp. 73-74, 96-98).  Because Mr. Hampton's RFC prevented him from performing all of the requirements for a full range of light work, and "to determine the extent to which these limitations erode the unskilled light occupational base, [the ALJ] asked the vocational expert whether jobs exist in the national economy [that Mr. Hampton can perform]."  (Doc. 8-3, p. 48).  The ALJ properly relied on the vocational expert's affirmative answers to find that Mr. Hampton is not disabled.  (Doc. 8-3, p. 48).

The ALJ examined the available evidence thoroughly and determined that Mr. Hampton is not disabled.  That finding rests on substantial evidence.  The

---

[7] The entire portion of the SSR 83-12 adjudicative guidance states, in pertinent part:

> In situations where the rules would direct different conclusions, and the individual's exertional limitations are somewhere "in the middle" in terms of the regulatory criteria for exertional ranges of work, more difficult judgments are involved as to the sufficiency of the remaining occupational base to support a conclusion as to disability. Accordingly, V[ocational] S[pecialist] assistance is advisable for these types of cases.

Court will not reweigh the evidence or substitute its judgment for that of the Commissioner.

**CONCLUSION**:

Consistent with the foregoing, the Court concludes the ALJ's decision was based upon substantial evidence and consistent with applicable legal standards. Accordingly, the decision of the Commissioner is AFFIRMED.  The Court will enter a separate order consistent with this memorandum of opinion.

**DONE** and **ORDERED** this 24th day of July, 2014.


**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE